UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MUREEN JONES-BARTLEY, on behalf of herself
and a class of similarly situated individuals,

                          Plaintiff,

     -v-

MCCABE, WEISBERG & CONWAY, P.C.,

                         Defendant.

Case No. 13-CV-4829 (KMK)

OPINION AND ORDER

---

Appearances:

Abraham Kleinman, Esq.
Kleinman LLC
Uniondale, NY
*Counsel for Plaintiff*

Tiffany Nicole Hardy, Esq.
Edelman, Combs, Latturner & Goodwin, LLC
Chicago, IL
*Counsel for Plaintiff*

Edmund Kean John, Esq.
Swartz Campbell LLC
Philadelphia, PA
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

       Plaintiff Mureen Jones-Bartley ("Plaintiff") filed the instant Complaint on behalf of

herself and a class of similarly situated individuals, alleging that Defendant McCabe, Weisberg

& Conway, P.C. ("Defendant") violated the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692 et seq., when in early 2013 it sent a letter attempting to collect a debt.  (*See*

Compl. (Dkt. No. 1).)  Before the Court is Defendant's Motion To Dismiss the Complaint

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for, respectively, lack of

subject matter jurisdiction and failure to state a claim.  (*See* Mot. To Dismiss Pl.'s Compl.

Pursuant to Rules 12(b)(1) & 12(b)(6) ("Mot.") (Dkt. No. 24).)  For the following reasons, the

Court grants Defendant's Motion in part and denies it in part.

## I.  BACKGROUND

### A.  Factual History

The Complaint alleges that Defendant "sent [P]laintiff [a] letter . . . . regarding [a] debt"

that Defendant "has been attempting to collect from [P]laintiff" and that concerns "an alleged

residential mortgage debt incurred for personal, family or household purposes," (Compl.

¶¶ 12–14).  Plaintiff attached the letter to the Complaint.  (*See* Compl. Ex. A ("MWC Letter").)

The letter, which Defendant appears to have sent to Plaintiff on behalf of a third-party

mortgage company that is not named in this suit, comprises three pages.  The first page, in

relevant part, contains Plaintiff's name and a "Loan [Number]," informs the recipient that there

has been a "failure to make . . . payments [on a loan] when due," notifies the recipient that "the

mortgagee has elected to . . . declare the entire principal balance of the loan due and payable,"

and makes a "demand . . . for the amount due."  (*Id.* at 1.)  The letter then states that the "[t]otal

principal due as of the date of this notice" is \$462,634.03.  (*Id.*)  The second page, in relevant

part, notifies the recipient that, "[d]espite [the] demand for payment, if any portion of this claim

is disputed, [the recipient is] to notify [the sender] within 30 days, indicating the nature of the

dispute as to the amount due or any part thereof."  (*Id.* at 2.)  It also contains a valediction and

the signature of Megan R. Sterback.  (*See id.*)  Finally, the third page, entitled "Validation of

Debt Notice," notifies the recipient, in bold, capitalized letters, that "THIS NOTICE AND

LETTER ARE AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION

OBTAINED WILL BE USED FOR THAT PURPOSE." (*Id.* at 3.)  It also contains, in relevant

part, language purporting to satisfy the sender's notification obligation under the FDCPA:

> Pursuant to the [FDCPA], a consumer debtor is required to be sent the following notice: (1) unless the consumer, within thirty (30) days after receipt of this notice, disputes the validity of the debt or any portion thereof, the debt will be assumed to be valid by the debt collector, (2) if the consumer sends notice the [sic] debt collector in writing within the thirty-day period that the debt or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a Judgment against the consumer and [the] copy of such verification or Judgment will be mailed to the consumer by the debt collector; and (3) upon the consumer's written request, sent by [the] consumer within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(*Id.*)  The bottom of the third page also contains the signature of Megan R. Sterback, along with

Defendant's name, address, and telephone number.  (*See id.*)

The Complaint alleges that Defendant sent this letter to Plaintiff "[o]n or about January

28, 2013." (Compl. ¶ 13.)  It also alleges that this was "the first letter [P]laintiff received from

[D]efendant regarding the debt described therein," and that this was "a form letter used by

[D]efendant as the initial letter it sends to a consumer." (*Id.* ¶¶ 14, 16.)

The Complaint alleges that the letter "fails to comply" with the FDCPA in four ways.

(*Id.* ¶ 18.)  First, the Complaint alleges that the letter violates 15 U.S.C. § 1692g(a)(1) (requiring

a debt collector to provide a consumer with "a written notice containing . . . the amount of the

debt") because the letter provides notice only of the "total principal due as of the date of th[e]

notice," whereas the "amount of the debt" owed would "include[] accrued but unpaid interest

and other fees and charges," which "generally amount to thousands of dollars." (*Id.* ¶ 19.)

Second, the Complaint alleges that the letter violates 15 U.S.C. § 1692g(a)(2) (requiring a debt

collector to provide a consumer with "a written notice containing . . . the name of the creditor to

whom the debt is owed") because the letter "completely fails to disclose who the current owner

of the debt is." (*Id.* ¶ 20.)  Third, the Complaint alleges that the letter violates 15 U.S.C. § 1692e

(prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer") because the letter does not "specify that the debtor has 30 days after receipt of the letter to dispute the debt," but rather states that the recipient has "30 days" to dispute the debt, "making the most logical interpretation 30 days from the date of the . . . letter." (*Id.* ¶ 21.)  Finally, the Complaint alleges that the letter violates 15 U.S.C. § 1692g(a)(3) (requiring a debt collector to provide a consumer with "a written notice containing . . . a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector") because the letter states that notification of a dispute within the 30-day period must "state 'the nature of the dispute as to the amount due or any part thereof,'" despite the lack of a statutory requirement to do so. (*Id.* ¶ 22 (quoting MWC Letter 2.)

    In addition to alleging claims on behalf of Plaintiff, the Complaint alleges the same claims "on behalf of a class" of individuals who received a similar letter. (Compl. ¶¶ 25–26.) The Complaint specifically defines a proposed class to include

> (a) all natural persons with New York addresses (b) who were sent a letter in the form represented by [the letter sent to Plaintiff and attached to the Complaint] (c) addressed to the same address as that of the mortgaged property (d) on or after a date one year prior to the filing of this action, and (e) on or before a date 20 days after the filing of this action.

(*Id.* ¶ 26.)  The Complaint further alleges that, "[o]n information and belief, there are more than 50 members of the class." (*Id.* ¶ 27.)

    Based on these allegations, the Complaint seeks a "judgment in favor of [P]laintiff and the class and against [D]efendant for: (1) [s]tatutory damages; (2) [a]ttorney's fees, litigation expenses[,] and costs of suit; [and] (3) [s]uch other and further relief as the Court deems proper." (*Id.* at 6–7.)

B.  Procedural History

Plaintiff filed the Complaint on July 11, 2013, (*see* Dkt. No. 1), and served Defendant

four days later, (*see* Dkt. No. 4 (Affidavit of Service)).  Then, in a letter dated July 16, 2013 and

filed pursuant to Rule II.A of the Court's Individual Rules of Practice, Plaintiff requested a pre-

motion conference to discuss her "anticipated motion for class certification and motion to enter

and continue [her] motion for class certification."  (Letter from Tiffany N. Hardy to Court (July

16, 2013)) ("PMC Letter") 1 (Dkt. No. 5).)[1]  Plaintiff specifically noted that she requested the

conference "in order to avoid having the class claims mooted by a Rule 68 Offer of Judgment or

other tender," noting further that "the class needs to be protected" from such an outcome.  (*Id.*)

On July 30, the Court endorsed the letter and directed Defendant "to respond to [the] letter by

August 5, 2013."  (*Id.* at 2.)

Defendant submitted two responses on August 5.  First, Defendant submitted a letter

requesting a 20-day extension to respond to Plaintiff's letter, which request the Court granted,

with Plaintiff's consent.  (*See* Letter from Swartz Campbell LLC to Court (Aug. 5, 2013) (Dkt.

No. 8).)  Second, Defendant submitted a separate letter "agree[ing] to [Plaintiff's] request" for a

pre-motion conference.  (Letter from Edmund K. John to Court (Aug. 5, 2013) (Dkt. No. 9).)

---

[1] This rule reads, in relevant part, that

> [f]or motions other than discovery motions [and certain other motions not relevant
> here], a pre-motion conference with the court is required for making any motion
> . . . .  To arrange a pre-motion conference, the moving party shall submit a letter
> . . . not to exceed three pages in length . . . setting forth the basis for the anticipated
> motion.  All parties so served must submit a letter response, not to exceed three
> pages, within three business days from service of the notification letter.

Hon. Kenneth M. Karas, Individual R. Practice II.A (Oct. 23, 2013).  The rule has since been
modified to exclude motions for class certification from the promotion conference requirement.

The Court endorsed this letter, directing Defendant, "[p]er the Court's Individual Practices, . . . to respond to the substance of Plaintiff's July 16 letter by August 15, 2013."  (*Id.*)[2]

On August 15, Defendant submitted a two-part response to Plaintiff's letter.  First, Defendant filed a document entitled "Offer of Judgment Pursuant to [Fed. R. Civ. P.] 68."  (*See* Offer of J. Pursuant to F.R.C.P. 68 ("Rule 68 Offer") (Dkt. No. 10).)[3]  The substance of that document reads, in full: "Defendant offers to allow judgment to be entered in favor of plaintiff, Mureen Jones-Bartley, and against defendant in amount [sic] of $1,000, plus attorneys' fees, litigation expenses[,] and costs of suit in amount [sic] to be determined by the Court."  (*Id.*)  Second, Defendant submitted a letter purporting to comply with the Court's order to respond to the substance of Plaintiff's pre-motion letter.  (*See* Letter from Edmund K. John to Court (Aug. 15, 2013) (Dkt. No. 29).)  Although Defendant, in its second August 5 letter, had previously agreed to Plaintiff's request for a pre-motion conference, Defendant opposed Plaintiff's request in its August 15 letter.  Specifically, Defendant stated that it "believe[d] that [Plaintiff's proposed] motion [for class certification] [would] not [be] necessary in light of the offer of judgment in an amount to compensate plaintiff for the maximum statutory damages and attorneys' fees and costs incurred to date."  (*Id.*)  In Defendant's view, "[t]his action is no longer

---

[2] The Court's Order directing Defendant to respond by August 15 post-dated its Order granting Defendant's request for a 20-day extension of the original August 5 deadline.  (*See* Dkt. Nos. 8–9.)

[3] Plaintiff objects to the Defendant's characterization of the document on the Court's Electronic Case Filing system ("ECF") as a "Notice of Acceptance with Offer of Judgment," even calling this characterization a "deceptive description."  (*See* Pl.'s Resp. to Def.'s Mot. To Dismiss ("Pl.'s Mem.") 3 (Dkt. No. 26) (citing description for Dkt. No. 10).)  However, the document itself contains no language implying that Plaintiff accepted the offer, and the Court believes that the ECF description of the document as a "Notice of Acceptance" is more likely to be "mistaken" than "deceptive."  Indeed, an erroneous ECF description would be only one of two clear mistakes in the filing, as the document itself purports to be filed "in the United States District Court for the Western District of Pennsylvania."  (*See* Rule 68 Offer.)

justiciable because plaintiff's individual claim is moot as a result of the offer of judgment

sufficient to make plaintiff, who admittedly suffered no actual damages and sought only to

obtain statutory damages, whole." (*Id.*)

Shortly after August 15, Plaintiff sent a letter to the Court responding to Defendant's

letter. (*See* Letter from Tiffany N. Hardy to Court (Dkt. No. 17).)[4]  In that letter, Plaintiff

renewed her request for a pre-motion conference "for leave to file her motion for class

certification," but also separately requested a pre-motion conference "for a motion to strike"

Defendant's Rule 68 Offer. (*See id.*)  In a letter dated August 23, 2013, Defendant responded to

the substance of Plaintiff's letter, arguing that the letter was "factually and legally inaccurate"

and maintaining that "Plaintiff's claim remains moot as a result of the offer of judgment served

on August 15, 2013." (Letter from Swartz Campbell LLC to Court (Aug. 23, 2013) 1–2 (Dkt.

No. 14.)  After reviewing both letters, the Court endorsed Plaintiff's letter on September 5,

informing the Parties that it "[would] hold a pre-motion conference on October 15, 2013." (Dkt.

No. 17 at 3.)

On September 18, approximately two weeks later, Defendant filed a Motion To Dismiss

the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure

12(b)(1). (*See* Dkt. No. 15.)  Because Defendant had failed to request a pre-motion conference

---

[4] The actual date on which Plaintiff's counsel sent the letter is unclear.  The letter itself is dated July 16, 2013, which is the date of Plaintiff's original pre-motion letter, and which predates Defendant's letter by almost a month. (*See* Dkt. No. 17.)  The Court endorsed the letter on September 5, 2013, but the letter was not docketed until September 20, 2013. (*See id.*) However, it appears that Plaintiff's counsel sent the letter at some point between August 15 and August 20, as Defendant's counsel, in a letter dated August 23, 2013, informed the Court that it "received plaintiff's letter dated July 16, 2013, at [their] office on August 20, 2013." (*See* Letter from Swartz Campbell LLC to Court (Aug. 23, 2013) (Dkt. No. 14).)

before filing the motion, the Court, on September 25, summarily denied the motion "without prejudice for failure to follow the Court's Individual Practices." (*See* Dkt. No. 18.)

The Court then held the pre-motion conference on October 15, at which conference the Court neither granted nor denied Plaintiff's request to file a motion for class certification. (*See* Dkt. (minute entry for Oct. 15, 2013).) Instead, it granted Defendant permission to file a Motion To Dismiss the Complaint. (*Id.*) Pursuant to a scheduling order adopted at the conference, Defendant filed the instant Motion and accompanying Memorandum of Law on November 18, 2013, (*see* Mot. To Dismiss (Dkt. No 24); Mem. of Law in Supp. of the Mot. To Dismiss Pl.'s Compl. ("Def.'s Mem.") (Dkt. No. 25)), Plaintiff filed an Opposition Memorandum on December 16, 2013, (*see* Pl.'s Resp. to Def.'s Mot. To Dismiss ("Pl.'s Mem.") (Dkt. No. 26)), and Defendant filed a Reply Memorandum on January 3, 2014, (*see* Reply Brief in Further Supp. of the Mot. To Dismiss ("Def.'s Reply") (Dkt. No. 27)). The Court now turns to a discussion of Defendant's Motion.

## II.  DISCUSSION

Defendant moves to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). With regard to the 12(b)(1) motion, Defendant argues that "the Court no longer has subject-matter jurisdiction" over the Complaint "[b]ecause the offer of judgment provides compensation to plaintiff for the maximum statutory damages," and therefore "there is no longer a justiciable claim." (Def.'s Mem. 2.) In the alternative, Defendant argues that, "to the extent plaintiff's FDCPA claims are based on" two of the four FDCPA violations alleged in the Complaint, the Court should dismiss the FDCPA claims pursuant to Rule 12(b)(6) because "plaintiff has failed to state a claim upon which relief may be granted." (*Id.*)

8

A.  Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *John Brady v. Int'l Bhd. of Teamsters, Theatrical Drivers & Helpers Local 187*, 741 F.3d 387, 389 (2d Cir. 2014) (internal quotation marks omitted).  Dismissal under Rule 12(b)(1) is therefore proper when a case becomes moot.  *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (per curiam) ("Under Article III of the U.S. Constitution, when a case becomes moot, the federal courts lack subject matter jurisdiction over the action." (alterations and internal quotation marks omitted)).  In making this determination, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  "But where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Id.* (alterations and internal quotation marks omitted).  Ultimately, "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (internal quotation marks omitted).

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 68 (2d Cir. 2014).  In reviewing the Complaint, the Court "accept[s] all factual allegations as true and draw[s] every reasonable inference from those facts in the plaintiff's favor." *In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 133 (2d Cir. 2014) (internal quotation marks omitted).  "But this indulgence does not relieve the plaintiff from alleging 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  Moreover, along with the Complaint itself, the Court "may consider . . .

any written instrument attached to the complaint as an exhibit, any statements or documents

incorporated in it by reference, and any document upon which the complaint heavily relies."

*ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014) (internal quotation marks omitted).

B.  Analysis

1.  Rule 12(b)(1)

Defendant first moves to dismiss the Complaint in its entirety because, in its view, the

Rule 68 Offer "provides compensation to plaintiff for the maximum statutory damages," and

therefore "there is no longer a justiciable claim."  (Def.'s Mem. 2.)  Because the Complaint

asserts claims on behalf of Plaintiff and, separately, on behalf of a potential class, the Court must

decide (a) whether Plaintiff's individual claim is moot, and, if so, (b) whether the Court retains

subject matter jurisdiction over the class claim after dismissing Plaintiff's individual claim but

before certifying the class.

a.  Plaintiff's Claim

As discussed, Defendant submitted an "Offer of Judgment" pursuant to Rule 68 on

August 15, 2013.  (*See* Rule 68 Offer.)[5]  Per the terms of the Rule 68 Offer, Defendant "offer[ed]

---

[5] Under Rule 68, "a party defending against a claim may serve on an opposing party an
offer to allow judgment on specified terms, with the costs then accrued."  Fed. R. Civ. P. 68(a).
"If, within 14 days after being served, the opposing party serves written notice accepting the
offer, either party may then file the offer and notice of acceptance, plus proof of service.  The
clerk must then enter judgment."  *Id.*  But if the offer is not accepted within 14 days, the
"unaccepted offer is considered withdrawn."  Fed. R. Civ. P. 68(b).  (In the event that an offer is
rejected or withdrawn, the Rule makes clear that this "does not preclude a later offer."  *Id.*)  The
plaintiff then bears the risk of responsibility for the defendant's "costs incurred after the offer
was made," which the plaintiff must pay "[i]f the judgment that the [plaintiff] finally obtains is
not more favorable than the unaccepted offer."  Fed. R. Civ. P. 68(d); *see also Stanczyk v. City of
New York*, 752 F.3d 273, 280 (2d Cir. 2014) ("Rule 68 is a cost-shifting rule designed to
encourage settlements without the burdens of additional litigation." (internal quotation marks
omitted)).

to allow judgment to be entered in favor of plaintiff, Mureen Jones-Bartley, and against

defendant in amount [sic] of $1,000, plus attorneys' fees, litigation expenses and costs of suit in

amount [sic] to be determined by the Court."  (*Id.*)  Defendant argues that this offer "provides

plaintiff maximum relief," and that Plaintiff's claim is therefore "no longer 'live'" in the Article

III sense.  (Def.'s Mem. 4.)  In so doing, Defendant relies on two Seventh Circuit cases

upholding district court dismissals of complaints on mootness grounds after a plaintiff rejected

an offer for complete relief.  (*See* Def.'s Mem. 4–5 (citing *Damasco v. Clearwire Corp.*, 662

F.3d 891, 895 (7th Cir. 2001) ("[O]nce the defendant offers to satisfy the plaintiff's entire

demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge

this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake." (internal

quotation marks omitted)); *Greisz v. Household Bank (Ill.), N.A.*, 176 F.3d 1012, 1015 (7th Cir.

1999) ("[An] offer[] [for] more than [the plaintiff's] claim [is] worth . . . in a pecuniary sense

. . . . eliminates a legal dispute upon which federal jurisdiction can be based.")).)[6]

      Before addressing Defendant's argument, it is worth analyzing what the Second Circuit

has to say about the interaction between Rule 68 offers and mootness.  In *Abrams v. Interco Inc.*,

719 F.2d 23 (2d Cir. 1983), two named plaintiffs had brought a private antitrust action on behalf

of themselves and a class, alleging that the defendant had engaged in an illegal price-fixing

scheme, and that they had personally outlaid $408.10 in purchases related to this scheme.  *See id.*

at 25.  They also sought treble damages.  *Id.* at 25.  The defendant thereafter "offered to allow

that judgment be taken against it in the sum of $1,224.30, three times the amount of plaintiffs'

purchases . . . , together with costs and reasonable attorneys' fees."  *Id.* at 25–26.  The district

---

      [6] Defendant also cites a case from the Southern District of Indiana, where the court
applied *Damasco* to an FDCPA claim.  (*See* Def.'s Mem. 5 (citing *Gonon v. Allied Interstate,
LLC*, 286 F.R.D. 405 (S.D. Ind. 2012)).)

court then "granted the [defendant's 12(b)(1)] motion . . . , ordered the parties to settle a judgment, and provided that if they could not agree on the attorneys' fees, the court would fix them." *Id.* at 26. Approximately three months later, the district court entered judgment dismissing the complaint, "without agreement on the subject of attorneys' fees." *Id.* On appeal, the Second Circuit upheld the district court's judgment dismissing the case as moot under Rule 12(b)(1). Noting that "all that remain[ed] [in the case] [was] [the plaintiffs'] individual claims, for which [the defendant] admittedly ha[d] offered to pay much more than plaintiffs could obtain by suit," the court recognized that, "[i]n substance, what defendant did by its offer was no different (except in being more favorable to the plaintiffs) than if it had submitted to a default judgment on the individual claims." *Id.* at 32. It further recognized that, in the context of "a final judgment fully satisfying [the] named plaintiffs' private substantive claims, . . . there [was] no justification for taking the time of the court and the defendant in the pursuit of minuscule individual claims which defendant ha[d] more than satisfied." *Id.* (internal quotation marks omitted). It therefore upheld the district court's judgment dismissing the complaint based on the court's prior order that the parties settle a judgment. *Id.* at 34.

Next, in *McCauley v. Trans Union, L.L.C.*, 402 F.3d 340 (2d Cir. 2005), the plaintiff, litigating pro se, had filed a complaint seeking $240 in compensatory damages for alleged violations of the Fair Credit Reporting Act. *Id.* at 340. The defendant thereafter made a Rule 68 offer of judgment for $240 plus costs, but the offer specified that judgment would "not be construed as an admission of liability and that it [would] remain confidential and [be] filed under seal." *Id.* at 341. After the plaintiff rejected the offer, the defendant moved for summary judgment, arguing that the offer covered the entirety of plaintiff's compensatory-damages claim and that, consequently, there was no longer a live case or controversy. *Id.* The district court

denied the defendant's motion for summary judgment, finding that the offer did not moot plaintiff's claim because "there remained a possibility that [the plaintiff] could recover punitive damages at the time of the settlement offer," and that the offer therefore "did not encompass everything [the plaintiff] could possibly have been entitled to recover from his claims." *Id.* But because, at that point, the district court had separately found that "punitive damages were no longer available" to the plaintiff and that he could only recover $240 in compensatory damages plus costs, the court noted that, "[w]ere [the defendant] to make [a renewed] Rule 68 offer of judgment [identical to the one] that it made prior to filing [the summary judgment] motion . . . the [c]ourt would be compelled to dismiss the action if [the plaintiff] were to reject the offer." *Id.* (internal quotation marks omitted).  The defendant thereafter made an identical Rule 68 offer of judgment, the plaintiff refused to accept it, and the court dismissed the case without entering judgment in plaintiff's favor.  *Id.*

On appeal, the plaintiff argued that the defendant's offer did not moot his case because he "ha[d] a legal and cognizable interest in obtaining a judgment that is not confidential and sealed, and thus [could] be used as precedent in future matters"; in the alternative, he argued that the district court erred in dismissing his claim without entering a judgment of $240 plus costs in his favor.  *Id.*  Addressing the plaintiff's first argument, the Second Circuit, citing *Abrams*, characterized as "clear" the proposition that the defendant's "unwillingness to admit liability is insufficient, standing alone, to make [the] case a live controversy."  *Id.* (citing *Abrams*, 718 F.2d at 33 n.9).  It also cited, with approval, *Chathas v. Local 134 IBEW*, 233 F.3d 508 (7th Cir. 2000), wherein the Seventh Circuit held that "a party [cannot] force his opponent to confess to having violated the law, as it is always open to a defendant to default and suffer judgment to be entered against him without his admitting anything."  *Id.* at 512; *see also Abrams*, 719 F.2d at 32

13

("In substance, what defendant did by its offer was no different . . . than if it had submitted to a default judgment on the individual claims."). The Second Circuit thus agreed with the district court that the plaintiff "[was] not entitled to keep litigating his claim simply because [the defendant] ha[d] not admitted liability." *Id.* at 342.

However, addressing the plaintiff's second argument, the Second Circuit held that the district court improperly dismissed the case as moot as a result of the rejected offer:

> In the absence of an obligation to pay [the plaintiff] the $240 in claimed damages, the controversy between [the plaintiff] and [the defendant] is still alive. When [the defendant] acknowledged that it owe[d] [the plaintiff] $240, but offered the money with the requirement that the settlement be confidential, [the defendant] made a conditional offer that [the plaintiff] was not obliged to take. Because judgment was then entered in [the defendant's] favor, [the defendant] was relieved of the obligation to pay the $240 it admittedly owe[d], and [the plaintiff], by his refusal of a conditional settlement offer, wound up with nothing. We therefore cannot conclude that the rejected settlement offer, by itself, moots the case so as to warrant entry of judgment in favor of [the defendant].

*Id.* In other words, the Second Circuit held that neither the offer itself, either when it was made or when it was rejected, nor the district court's judgment of dismissal, mooted the claim; instead, only entry of judgment in the plaintiff's favor, thereby legally obligating the defendant to satisfy plaintiff's claim, can moot the claim.

Having found that the district court improperly dismissed the case, the Second Circuit then offered what it described as a "better resolution" of the case—namely, "entry of a default judgment against [defendant] for $240 plus reasonable costs." *Id.* "Such a judgment would remove any live controversy from this case and render it moot. Moreover, a default judgment would serve [the defendant's] desire to end the case, would award [the plaintiff] his damages and, like the Rule 68 settlement offer, would have no preclusive effect in other litigation." *Id.* The court then noted that, "[a]t oral argument, both parties agreed that entry of a default judgment would satisfactorily resolve th[e] case," and it therefore "vacate[d] the judgment

entered in favor of [the defendant] and remand[ed] the case to the district court for the limited

purpose of entering a default judgment in favor of [the plaintiff] for $240 plus such costs as the

district court deems reasonable." *Id.*

*McCauley* left several issues unresolved, some of which the Second Circuit has

confronted.  In *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85 (2d Cir.

2007), the plaintiff sought $500,000 in damages in a breach-of-contract claim, but the district

court had held that the plaintiff was legally entitled to only $50 in damages from each defendant.

*Id.* at 88.  The defendants thereafter submitted offers of judgment for $50, the plaintiff rejected

the offers, and the district court "entered judgment against defendants in the amount of $50 each

and dismissed with prejudice [the plaintiff's] claims for damages in excess of $50 . . . . solely on

[the grounds of] . . . subject matter jurisdiction and the doctrine of mootness." *Id.* at 89 (internal

quotation marks omitted) (alteration in original).  On appeal, the Second Circuit held that the

district court erred when it dismissed the case on mootness grounds.  As it explained, "[t]he

defendants' consent to judgment against them in the amount of $50 satisfied only a tiny portion

of the $500,000 dispute between the parties . . . .  The parties thus retained a practical stake in the

dispute, and the court continued to be capable of rendering a judgment that would have a

practical effect on the legal rights of the parties." *Id.* at 95.  In dismissing the case as moot, the

district court "confused the mootness *of an issue* with the mootness of a case or claim in the

Constitutional sense." *Id.* at 94.  "So long as the district court's ruling limiting the liability to

$50 remained in force, all litigable *issues* pertaining to the defendants' liability ceased to have

practical importance, because of the defendants' tender of that amount.  The *case*, however, was

not moot, and the court did not lose subject matter jurisdiction." *Id.* at 95.  In other words, "[t]he

defendants' tender of $50 did not moot the plaintiff's claim for $500,000." *Id.* at 96.  Notably,

the court specifically distinguished the case from *Abrams* on this ground, explaining that, "[i]n *Abrams*, . . . the defendant tendered every cent (and more) to which the plaintiff claimed entitlement," but in the case at bar, "the defendants tendered only a portion—indeed, only a small portion—of the damages plaintiff claimed." *Id.* "The district court's ruling that the plaintiff had no entitlement to any amount exceeding what the defendants had tendered *resolved* the dispute between the parties but did not negate its existence." *Id.* The court therefore "affirm[ed] the district court's . . . entry of judgment against each defendant for $50 . . . , and its dismissal of the claim for damages in excess of $50," but it held that the district court "erred in its view that the dismissal of the case was based on mootness and lack of subject matter jurisdiction." *Id.* at 89.

Next, in *Doyle v. Midland Credit Management*, 722 F.3d 78 (2d Cir. 2013) (per curiam), the plaintiff had filed a complaint alleging multiple claims under the FDCPA and seeking both statutory and actual damages. *Id.* at 79–80. At a hearing on the defendant's motion to dismiss, the defendant orally "offered to pay [the plaintiff] $1,001, in addition to costs, disbursements, attorney's fees, and an additional $10 to cover actual damages." *Id.* at 80. The plaintiff's counsel "agreed that this offer provided for all of the relief that [the plaintiff] sought," but the plaintiff "nonetheless refused to settle the case for that amount." *Id.* The district court thereafter "held that the case was . . . moot, and it granted [the defendant's] motion to dismiss" but did not enter judgment in the plaintiff's favor. *Id.* On appeal, the plaintiff argued, with respect to the district court's ruling that the offer mooted the case, only that the defendant's oral offer "could [not] have rendered his action moot because [it did not] compl[y] with Rule 68," *id.* at 79, which the plaintiff argued does not allow oral offers, *id.* at 81. The Second Circuit easily rejected this argument, holding that "an offer need not comply with [Rule 68] in order to render a case moot

16

under Article III." *Id.* at 81.[7]  "Consequently," the court explained, it "agree[d] with the district

court that [the plaintiff's] refusal to settle the case in return for [the defendant's] offer . . . ,

notwithstanding [the plaintiff's] acknowledgment that he could win no more, was sufficient

ground to dismiss [the] case for lack of subject matter jurisdiction." *Id.*  It therefore affirmed the

district court judgment dismissing the case without entering judgment in the plaintiff's favor.  *Id.*

Finally, in *Cabala v. Crowley*, 736 F.3d 226 (2d Cir. 2013) (per curiam), which post-

dated *Doyle* by almost four months, the plaintiff had filed a complaint under the FDCPA seeking

statutory damages alone.  *Id.* at 227.  Shortly after the complaint was filed, the defendant's

attorney contacted the plaintiff's attorney "and offered to settle [the case] for $1000, the

maximum statutory damages mandated by the FDCPA, and also offered, as mandated by the

statute, to pay [the plaintiff's] attorney's fees and costs, with the amount of such fees to be

determined by the court."  *Id.*  Instead of rejecting the offer, the plaintiff proposed a counter-

---

[7] Interestingly, in so holding, the court purported to rely, in part, on *ABN Amro*.  *See Doyle*, 722 F.3d at 81 (citing *ABN Amro*, 485 F.3d at 92–93).  In the section of that opinion relied on by the *Doyle* court, the *ABN Amro* court had held that the district court's decision was "final" for the purposes of appellate jurisdiction under 28 U.S.C. § 1291.  *See* 485 F.3d at 92. The court then proceeded to explain its ruling as follows:

> In entering judgment, the court awarded against each defendant the maximum amount for which the defendant could, according to the court's ruling, be held liable, and rejected with prejudice plaintiff's claims insofar as they sought further damages.  Thus, the court had ruled on all the relief demanded by the complaint, and nothing remained for the court to do but enter and execute the judgment.  If the plaintiff's appeal seeking to overturn the ruling limiting liability proves unsuccessful, the case is at an end.

*Id.* at 92–93.

In *Doyle*, the court cited this language as an example of the Second Circuit "affirming [a] 12(b)(1) dismissal . . . not based on a formal Rule 68 Offer of Judgment."  722 F.3d at 81 (citing *ABN Amro*, 485 F.3d at 92–93).  However, the *Doyle* court did not discuss the other sections of *ABN Amro* which explained that, although the decision effectively upheld a 12(b)(1) dismissal, it explicitly did not do so on 12(b)(1) grounds.  *See* 485 F.3d at 94–96.

offer, "request[ing] a lump sum settlement including attorney's fees." *Id.*  Ultimately, the parties

agreed to a joint stipulation "for judgment in favor of [the plaintiff], with damages set at the

statutory maximum as provided in [the defendant's] initial settlement offer," and with a request

for a "judicial determination of attorney's fees and costs." *Id.* at 228.  Following the joint

stipulation, the parties engaged in "subsequent discovery and litigation over the amount of the

fee award to which [the plaintiff] was entitled," with the parties specifically disputing whether

the plaintiff was entitled to fees and costs following the defendant's original offer. *Id.*  "The

district court, observing that there was a sincere dispute over the 'nature and form' of the

settlement—specifically about whether the settlement would include a judgment that would

make the attorney's fee award judicially enforceable—concluded that [the defendant's] original

offer did not moot the action," and it therefore concluded that "any reasonable attorney's fees

incurred by [the plaintiff] during the continuing litigation should be borne by [the

defendant]." *Id.*

      The defendant appealed the district court's award of post-offer attorney's fees, arguing, in

part, that "his initial offer for the maximum recovery available under the FDCPA . . . rendered

the underlying action moot," and, in the alternative, that any attorney's fees incurred after the

offer were not "reasonable attorney's fees" because "[the plaintiff] and his attorney acted

unreasonably in continuing to litigate after communication of the" offer. *Id.* at 228–29.  The

Second Circuit first rejected the defendant's argument that the settlement offer, by itself,

rendered the case moot.  Relying entirely on *McCauley*, the court described that case as

"reject[ing] the argument that an unaccepted offer of settlement for the full amount of damages

owed 'moots' a case such that the case should be dismissed for lack of jurisdiction if the plaintiff

desires to continue the action." *Id.* at 228.  "Rather, [*McCauley*] held, the typically proper

disposition in such a situation is for the district court to enter judgment against the defendant for

the proffered amount and to direct payment to the plaintiff consistent with the offer.  *Only after such a disposition is the controversy resolved such that the court lacks further jurisdiction*."  *Id.* (emphasis added) (citing *McCauley*, 402 F.3d at 342).  Applying those principles to the case at bar, the court held that the defendant's offer, which was an offer for settlement and which "specifically sought to avoid entry of judgment," was insufficient to moot the case:

> Upon [the plaintiff's] rejection of his proposal, [the defendant] neither offered a Rule 68 entry of judgment . . . nor sought entry of judgment as authorized by *McCauley*, which under the terms of that case would have ended the litigation. . . . Instead, the parties continued to dispute a substantive issue relevant to the disposition of the case.  Because the parties continued to dispute the form and extent of the relief to which [the plaintiff] was entitled, the case never became moot.

*Id.* at 228–29.

Turning to the question of whether the plaintiff "acted unreasonably in continuing to litigate after communication of the . . . settlement offer," *id.* at 229, the court held that the plaintiff did not act unreasonably because, even where a defendant offers a settlement for complete relief, a plaintiff may reasonably insist on an offer of judgment.  *See id.* ("It takes two to stage a useless litigation; [the plaintiff's] insistence on a judgment was no more rigid than [the defendant's] equally determined opposition to such a judgment.").  Separately, the court also "reject[ed] [the defendant's] argument that his settlement offer should be treated as equivalent to a Rule 68 offer of judgment."  *Id.* at 230 ("Failure to pay the negotiated settlement gives rise to a breach of contract action, while a judgment may be enforced using all the remedies available to a judgment creditor.").  It therefore affirmed the district court's award of attorney's fees, finding that, "[b]ecause [the defendant's] initial offer to settle did not include an offer of judgment, it did not fully resolve the dispute between the parties, and thus further litigation by [the plaintiff] was not per se unreasonable."  *Id.* at 231 (italics omitted).

Two clear principles emerge from this line of cases.  First, to moot a plaintiff's claim, the defendant must make an offer of judgment; an offer of settlement is insufficient.  *See id.* at 229 ("Because the parties continued to dispute the form and extent of the relief to which [the plaintiff] was entitled, the case never became moot.").  Defendant need not make that offer in strict compliance with Rule 68; courts should focus on the substance of the offer, not the procedure employed.  *See Doyle*, 722 F.3d at 81 ("[A]n offer need not comply with [Rule 68] in order to render a case moot under Article III.").  Second, the offer of judgment must fully satisfy the plaintiff's claim; a genuine dispute over whether the offer satisfies the entirety of the claim may, by itself, constitute a live case or controversy.  *See ABN Amro*, 485 F.3d at 96 ("The district court's ruling that the plaintiff had no entitlement to any amount exceeding what the defendants had tendered *resolved* the dispute between the parties but did not negate its existence. . . .  There unquestionably was, and still is, a case and controversy for the court to adjudicate.").

In this case, there is no dispute with regard to the first issue—Defendant has made an offer of judgment under Rule 68, and thus the Court need not analyze the aforementioned issues present in *Cabala* and *Doyle*.  Regarding the *ABN Amro* issue, Plaintiff does dispute whether Defendant's Rule 68 Offer provides complete relief, describing it in her Memorandum as "defective."  (*See* Pl.'s Mem. 8–9.)  However, Plaintiff's objection does not concern the offer of $1,000 for her FDCPA claim, but rather relates only to the scope of the offer's provision for attorney's fees and costs.  (*See id.*)  Because the Court denies Defendant's Motion on other grounds, it need not address whether the narrow dispute over the scope of the Court's

determination of the costs and attorney's fees award is sufficient to preserve a live case or

controversy at this stage in the case.[8]

---

[8] While Defendant's Rule 68 offer of judgment includes no explicit limit on attorney's fees, (*see* Rule 68 Offer (offering "attorney's fees . . . in amount [sic] to be determined by the court")), Defendant later describes its offer as only including those "attorney's fees . . . incurred to date," (*see* Dkt. No. 29 (Defendant's letter to the Court, filed the same day as its Rule 68 offer)). Plaintiff argues that the Rule 68 Offer is "defective" because of that limit. (*See* Pl.'s Mem. 8.)  In arguing that "[t]he offer of judgment provides Plaintiff maximum relief, as Plaintiff, by her own admission, did not suffer any actual damages," (Def.'s Reply 3), Defendant responded to an argument that Plaintiff did not make, while failing to respond to the argument Plaintiff did make.  This indicates, at least for now, that there may be a dispute over the sufficiency of the offer as it relates to fees and costs—to which, as Plaintiff points out, Plaintiff is entitled under the FDCPA.  (*See* Pl.'s Mem. 8.)  *See also* 15 U.S.C. § 1692k(a)(3) (making a defendant liable, "in the case of any successful action to enforce . . . liability [under the FDCPA], [for] the costs of the action, together with a reasonable attorney's fee as determined by the court").  But the Court also notes that it is unclear how important this dispute is and will continue to be in the context of the litigation, as Defendant could potentially cure the specific defect Plaintiff identifies in a future offer.  *See Cabala*, 736 F.3d at 229–30 (considering, in the context of an offer to accept a court's determination of reasonable attorney's fees, whether any fees incurred after the defendant made an offer were reasonable).)

Moreover, while some courts in the Second Circuit have held that a cap on attorney's fees renders a Rule 68 offer insufficient to moot a plaintiff's claim, *see, e.g., Edge v. C. Tech Collections, Inc.*, 203 F.R.D. 85, 88 (E.D.N.Y. 2001) ("Because [the defendant's] offer of judgment caps the costs and attorney's fees [at $2500], it is not offering the maximum amount [the plaintiff] could recovery under the statute . . . . [and] therefore [it] is not moot."); *Weissman v. ABC Fin. Servs., Inc.*, 203 F.R.D. 81, 83 (E.D.N.Y. 2001) (finding offer insufficient to moot the plaintiff's claims where the defendant offered $500 for attorney's fees and costs, because "an offer of judgment that caps those costs and fees[ ] does not represent more money than the plaintiff could have received under the statute"); *Wilner v. OSI Collection Servs., Inc.*, 201 F.R.D. 321, 322–23 (S.D.N.Y. 2001) (finding offer insufficient to moot the plaintiff's claims where defendant offered $3000, inclusive of attorney's fees), others have held that an offer limiting the recovery of attorney's fees to those incurred up to the date of the offer *are* sufficient to moot a plaintiff's claim, *see, e.g., Thomas v. Am. Serv. Fin. Corp.*, 966 F. Supp. 2d 82, 91–92 (E.D.N.Y. 2013) (noting that "courts in this Circuit have accepted as sufficient offers of judgment in FDCPA cases that included . . . 'to date' language" and finding an offer a judgment sufficient to limited the recovery of fees to "reasonable attorney's fees incurred by [the] [p]laintiff to date as determined by the court" (emphasis omitted) (first alteration in original) (some internal quotation marks omitted)); *Ambalu v. Rosenblatt*, 194 F.R.D. 451, 452–53 (E.D.N.Y. 2000) (same); *cf. Murphy v. Equifax Check Servs., Inc.*, 35 F. Supp. 2d 200, 203–204 (D. Conn. 1999) (dismissing the plaintiff's claims after a Rule 68 offer of judgment was made despite a dispute over the amount of attorney's fees because "[t]he only interest remaining is that of [the plaintiff's] attorney," and favorably citing *Lee v. Thomas & Thomas*, 109 F.3d 302, 305–307 (6th Cir. 1997) for the proposition that "reasonable" attorney's fees do not include fees for

In this context, the disposition of Defendant's Motion first turns on a fourth issue, one explicitly or implicitly raised in the previously discussed cases, but resolved in apparently conflicting ways.  Assuming that Defendant's offer of judgment is for full relief, the Court must determine whether an offer of judgment for full relief, by itself, moots a case and warrants a 12(b)(1) dismissal, as the Second Circuit appeared to hold in *Doyle*, *see* 722 F.3d at 81 (holding that the plaintiff's "refusal to settle the case . . . was sufficient ground to dismiss th[e] case for lack of subject matter jurisdiction"), or whether a case becomes moot only after a court enters judgment in the plaintiff's favor, as the Second Circuit appeared to hold in *McCauley*, *see* 402 F.3d at 340 ("[W]e find that the plaintiff's refusal did not, in and of itself, moot the case . . . ."). This dispute is outcome determinative in this case because, if *Doyle* applies, then Defendant's offer mooted Plaintiff's claim and the Court must grant Defendant's Motion, but if *McCauley* applies, then Plaintiff's claim is not moot unless and until the Court enters judgment in Plaintiff's favor.

For multiple reasons, the Court finds *McCauley* to be controlling in this case.  First, although the effect of *Doyle* was to affirm a district court's dismissal of case for lack of subject matter jurisdiction without entering judgment for the plaintiff, the decision did not directly address the issue of whether such a disposition was appropriate.  True, the *Doyle* court was clear that the district court "properly dismissed" the case as moot.  *See* 722 F.3d at 81 (holding that "the district court properly dismissed the entirety of [the plaintiff's] case for lack of subject matter jurisdiction"); *id.* (concluding "that the district court properly dismissed th[e] case as

---

work performed after a Rule 68 offer of judgment is made).  Therefore, because Defendant's Rule 68 offer in this case does not set a specific cap on attorney's fees, but rather, according to Defendant's letter, only limits recovery to those fees incurred "to date," language that courts in the Second Circuit have found to be sufficient, Defendant's offer provides complete relief.

moot"). But it did so only in the context of the plaintiff's sole argument raised on appeal, which was that the defendant's offers "could [not] have rendered his action moot because neither offer complied with Rule 68." *Id.* at 79. Directly responding to that argument, the court held that "an offer need not comply with Rule 68 in order to render a case moot under Article III." *Id.* It was in that specific context, therefore, that it "agree[d] with the district court that [the plaintiff's] refusal to settle the case . . . was sufficient ground to dismiss th[e] case for lack of subject matter jurisdiction." *Id.* at 81. By contrast, in *McCauley*, the court directly addressed the question of "whether a plaintiff's rejection of an offer of judgment under [Rule 68] moots the case so that entry of judgment in favor of the defendant is appropriate." 402 F.3d at 340. In response to that question, which is almost identical to the question presented in this case, the court found "that the plaintiff's refusal *did not, in and of itself,* moot the case." *Id.* (emphasis added). Thus, *McCauley* should control because it directly addressed the issue.

Second, in light of the Second Circuit's procedures for overruling a prior panel decision, it is unlikely that the *Doyle* court intended to overrule *McCauley*'s holding. "In general, a panel of [the Second Circuit Court of Appeals] is bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of [that] Court or by the Supreme Court." *Lotes Co., Ltd. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 405 (2d Cir. 2014) (internal quotation marks omitted); *see also Fed. Grievance Comm. v. Williams*, 743 F.3d 28, 29–30 (2d Cir. 2014) ("Prior panels of this Court have held that [a certain standard] applies to [this case], and we are not free to revisit those holdings." (citations omitted)). Thus, "where there has been an intervening Supreme Court decision that casts doubt on [the Second Circuit's] controlling precedent, one panel of [the Second Circuit Court of Appeals] may overrule a prior decision of another panel." *Lotes Co.*, 753 F.3d at 405 (internal quotation marks omitted). Or, in certain

circumstances, the Second Circuit may engage in a "mini-*en banc*," where a panel "circulate[s] [an] opinion to all active members of [the] Court prior to filing" and overrules a prior panel decision when it "receive[s] no objection" to the circulated opinion. *See Diebold Found., Inc. v. C.I.R.*, 736 F.3d 172, 183 n.7 (2d Cir. 2013). But here, there is no indication that either of these events occurred. Indeed, the Supreme Court explicitly declined to resolve this very issue in a recently decided case. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528–29 (2013) ("While the Courts of Appeals disagree whether an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot, we do not reach this question, or resolve the split, because the issue is not properly before us." (footnote omitted)). And the four dissenting justices in that case who did address the issue adopted a position directly contrary to *Doyle*. *See id.* at 1533 (Kagan, J. dissenting) ("[A]n unaccepted offer of judgment cannot moot a case. When a plaintiff rejects such an offer—however good the terms—her interest in the lawsuit remains just what it was before. And so too does the court's ability to grant her relief. . . . As every first-year law student learns, the recipient's rejection of an offer leaves the matter as if no offer had ever been made." (internal quotation marks omitted)). Furthermore, it is unlikely the *Doyle* court engaged in a "mini-en banc" to overrule *McCauley*, as the Second Circuit, when it later recognized the potential inconsistency between *Doyle* and *McCauley*, did not note that the former case overruled the latter. *See Cabala*, 736 F.3d at 230 n.4 ("Since *Doyle* is not inconsistent with our holding here, we need not address whether it is inconsistent with *McCauley* . . . .").

Third, the Second Circuit's treatment of *Doyle* in *Cabala* appears to suggest that the Court should follow *McCauley* instead of *Doyle*. As discussed, the *Cabala* court engaged in a separate analysis of, first, whether an offer, by itself, mooted the case, and, second, whether it

was reasonable for the plaintiff to reject the offer for the purpose of awarding reasonable attorney's fees. *See* 736 F.3d at 228–29. To answer the former question, the court applied *McCauley* alone, noting that, under that case, where a plaintiff rejects an offer of judgment, "the typically proper disposition . . . is for the district court to enter judgment against the defendant for the proffered amount and to direct payment to the plaintiff consistent with the offer," and then further noting that "[o]*nly after* such a disposition is the controversy resolved such that the court lacks further jurisdiction." *Id.* at 228 (emphasis added) (citing *McCauley*, 402 F.3d at 342). Where the *Cabala* court cited *Doyle*, it did so only in the second part of the analysis, noting that *Doyle* was not inconsistent with its finding that there was no "precedent holding that [the defendant's] settlement proposals were equivalent to Rule 68 offers," and describing *Doyle* as holding that an offer of *judgment* need not comply with Rule 68 to moot a cause of action. *Id.* at 230 ("To hold that an offer of judgment that fails to meet the technical requirements of Rule 68 is nevertheless an offer of judgment is not equivalent to holding that an offer of an informal settlement without judgment is equivalent to a Rule 68 offer of judgment."). And although the *Cabala* court declined to "address whether [*Doyle*] is inconsistent with *McCauley*," it also noted that "*McCauley* . . . was not cited by the *Doyle* court," further confirming this Court's view that *Doyle* did not intend to overrule *McCauley*. *Id.* at 230 n.4.[9] *Cabala* is thus further evidence that

---

[9] It bears noting that the *Cabala* court's observation of the *Doyle* court's failure to cite *McCauley* applies equally to the district court's opinion in *Doyle*, which not only failed to cite *McCauley*, but also stated that "[t]he Second Circuit has not specifically addressed whether a FDCPA case may be mooted by an offer of judgment," before citing summary orders from the Third, Seventh, and Ninth Circuits that purportedly "held that an offer of judgment for the full amount of damages recoverable by the plaintiffs moots a FDCPA case." *Doyle v. Midland Credit Mgmt., Inc.*, No. 11-CV-5571, 2012 WL 5210596, at *2 (E.D.N.Y. Oct. 23, 2012) (citing *Marschall v. Recovery Solution Specialists, Inc.*, 399 F. App'x 186, 187–88 (9th Cir. 2010), *Thomas v. Law Firm of Simpson & Cybak*, 244 F. App'x 741, 743–44 (7th Cir. 2007), and *Goodmann v. People's Bank*, 209 F. App'x 111, 114–15 (3d Cir. 2006)), *aff'd*, 722 F.3d 78 (2d Cir. 2013). The district court further noted that "[d]istrict courts within [the Second Circuit]

the Court should follow *McCauley*, rather than *Doyle*, in deciding Defendant's Motion.  *See also*

*Rivero v. Cach LLC*, No. 11-CV-4810, 2014 WL 991721, at *4 n.9 (E.D.N.Y. Mar. 13, 2014)

("[I]n *Cabala* the Second Circuit called into question whether any Rule 68 offer of judgment

should be held to moot a case, notwithstanding its recent decision in *Doyle*.").

      Fourth, if the Court were to interpret *Doyle* to hold that an offer of judgment, by itself,

mooted a case, then it would follow that *Doyle* conflicts not only with *McCauley*, but also with

*ABN Amro*.  As discussed, in *ABN Amro*, the district court had held that "once the defendants

tendered [the offer of judgment], . . . the case had become moot, and the court was compelled to

dismiss it for lack of subject matter jurisdiction under Rule 12(b)(1)" and enter judgment in the

plaintiff's favor.  485 F.3d at 94.  Holding that this was error, the Second Circuit noted that "[i]f

the case had truly become moot and the court had lacked subject matter jurisdiction, the court

would have been without power to enter a judgment in plaintiff's favor. . . .  It would have been

compelled simply to dismiss, leaving the dispute unadjudicated."  *Id.*  The court then went on to

explain that, where "parties . . . retain[] a practical stake in [a] dispute, and [a] court continue[s]

to be capable of rendering a judgment that would have a practical effect on the legal rights of the

---

have also consistently applied this line of reasoning in the context of claims under the FDCPA."
*Id.*  However, the cases the district court cited either pre-dated *McCauley* or failed to cite
*McCauley* while relying on pre-*McCauley* cases.  *See id.* (citing *Ambalu v. Rosenblatt*, 194
F.R.D. 451, 453 (E.D.N.Y. 2000) (dismissing a case for lack of subject matter jurisdiction but
also entering judgment in the plaintiff's favor), *Greif v. Wilson, Elser, Moskowitz, Edelman &
Dicker LLP*, 258 F. Supp. 2d 157, 159–60 (E.D.N.Y. 2003) (applying *Ambalu* to grant a motion
to dismiss and enter judgment in the plaintiff's favor), and *Milton v. Rosicki, Rosicki & Assocs.,
P.C.*, No. 02-CV-3052, 2007 WL 2262893, at *2 (E.D.N.Y. 2007) (same)).

      Although it is true that *McCauley* was not an FDCPA case—making the district court's
statement that "[t]he Second Circuit has not specifically addressed whether a FDCPA case may
be mooted by an offer of judgment" technically correct, *see id.*—there is no language in
*McCauley* limiting it to certain contexts, or indicating that it would not apply in an FDCPA case.
Indeed, the Second Circuit specifically applied *McCauley* to the plaintiff's FDCPA claims in
*Cabala*.  *See* 736 F.3d at 227.

parties[,] [t]here [is] no mootness of the sort that deprives the court of subject matter

jurisdiction," even if "[c]ertain issues that would otherwise have been in dispute became moot."

*Id.* at 95; *see also Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) ("[A] case becomes moot only

when it is impossible for a court to grant any effectual relief whatever to the prevailing party."

(internal quotation marks omitted)).  *ABN Amro* is thus entirely consistent with *McCauley*'s

holding that a "rejected [Rule 68] offer, by itself, [does not] moot[] [a] case so as to warrant

entry of judgment in favor of [a defendant]," *see* 402 F.3d at 342, even though *ABN Amro*, like

*Doyle*, did not cite *McCauley* at all.[10]  It is thus even less likely that the *Doyle* court intended to

silently overrule both of these cases, which are independently in agreement on this point, while

addressing a narrow question only tangentially related to the primary issue present in *McCauley*

and *ABN Amro*.

      For all of these reasons, the Court believes that *McCauley* provides the appropriate legal

standard to apply in this case, and it thus finds that Plaintiff's "refusal [of Defendant's offer] did

not, in and of itself, moot the case."  *McCauley*, 402 F.3d at 340.  *But see Franco v. Allied

Interstate LLC*, No. 13-CV-4053, 2014 WL 1329168, at *2, 5 (S.D.N.Y. Apr. 2, 2014) (citing

*Doyle* for the proposition that "[a] valid offer of judgment that would satisfy a plaintiff's entire

claim for relief . . . renders a plaintiff's claim moot, even if plaintiff refuses the offer of

judgment"; dismissing the case as moot, and entering judgment in the defendant's favor); *Foos v.

Monroe-2 Orleans BOCES*, No. 10-CV-6221, 2014 WL 122408, at *2–3 (W.D.N.Y. Jan. 13,

2014) (citing *Doyle* for the proposition that "an offer for a plaintiff's maximum recovery will

---

      [10] While *Doyle* did not cite *McCauley*, it did cite *ABN Amro* as support for its holding.
*See* 722 F.3d at 81 (citing *ABN Amro*, 485 F.3d at 92–93).  However, for the reasons the Court
has previously discussed with regard to *Doyle*'s reading of *ABN Amro*, *see supra* note 7, the
Court does not interpret *Doyle* as addressing the potential conflict the Court has identified
between the two cases.

render an action moot," dismissing the case as moot, and entering judgment in the defendant's favor).

Having determined the correct standard to apply, the Court now must decide whether to dismiss Plaintiff's claim as moot.  Initially, the Court notes that, because the Rule 68 Offer itself did not moot Plaintiff's claim, and because the Court has not entered judgment in Plaintiff's favor, there is no doubt that the Plaintiff's claim is currently not moot.  *See Cabala*, 736 F.3d at 228 ("Only after [entering judgment against defendant for the proffered amount and directing payment to the plaintiff consistent with the offer] is the controversy resolved such that the court lacks further jurisdiction.").  But this observation does not resolve Defendant's Motion, because the Court is also mindful of the Second Circuit's oft-cited dicta in *Abrams* that "there is no justification for taking the time of the court and the defendant in the pursuit of miniscule individual claims which defendant has more than satisfied."  719 F.2d at 32; *see also Doyle*, 722 F.3d at 80 (citing this language from *Abrams*); *ABN Amro*, 485 F.3d at 93 (same).  The Court therefore must decide whether this case warrants the "typically proper disposition" in this situation, which is "for the district court to enter judgment against the defendant for the proffered amount and to direct payment to the plaintiff consistent with the offer."  *Cabala*, 736 F.3d at 228; *see also McCauley*, 402 F.3d at 342 (noting that "entry of a default judgment against [the defendant]" is a "better resolution" than dismissing the case on mootness grounds).

For the following reasons, the Court declines to follow that approach in this case. Initially, as a technical matter, it is unclear whether Defendant still consents to entry of default judgment in its favor.  Defendant made its offer under Rule 68, and per the terms of that rule, an offer not accepted within 14 days "is considered withdrawn."  Fed. R. Civ. P. 68(b).  Defendant has not submitted a renewed offer, and no part of the record, including Defendant's letters to the

Court and its Memoranda in support of its Motion, indicates that Defendant's offer remains viable.  Furthermore, Defendant's Motion does not seek entry of judgment in Plaintiff's favor, but rather seeks "an order dismissing [P]laintiff's complaint" pursuant to Rules 12(b)(1) and 12(b)(6).  (Mot.)  *See Cabala*, 736 F.3d at 229 (noting that the defendant never "sought entry of judgment as authorized by *McCauley*, which under the terms of that case would have ended the litigation").  The Court cannot enter a default judgment absent a specific request from a party. *See* Fed. R. Civ. P. 55(b)(1)–(2) ("If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—*on the plaintiff's request* . . .—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person. . . .  *In all other cases, the party must apply to the court for a default judgment*." (emphasis added)).  And the Court is aware of no other procedural mechanism by which it could enter judgment absent such a request.  Indeed, in *McCauley*, the court remanded the case "for the limited purpose of entering a default judgment in favor of [the plaintiff]" only after "both parties agreed [at oral argument] that entry of a default judgment would satisfactorily resolve the case."  402 F.3d at 342.  Here, however, Defendant's offer has expired, and Defendant has not moved for a judgment in Plaintiff's favor.  Instead, Defendant appears to make the very argument the Court has rejected in this Opinion—i.e., that the offer itself mooted Plaintiff's claim, warranting dismissal under Rule 12(b)(1) and making entry of judgment unnecessary.  (*See* Dkt. No. 29 (Defendant's letter to the Court, filed the same day as its Rule 68 Offer, arguing that "[t]his action is no longer justiciable because plaintiff's individual claim is moot as a result of the offer of judgment"); Dkt. No. 14 at 2 (Defendant's letter to the Court, filed eight days after the Rule 68 Offer, arguing that "Plaintiff's claim remains moot as a result of the offer of judgment"); Def.'s Mem. 4 ("Because plaintiff has been offered maximum

relief, this matter is no longer 'live' and the Court does not have jurisdiction."); Def.'s Reply 3

("Plaintiff's claim is moot as a result of the offer of judgment . . . and, therefore, this Court no

longer has subject-matter jurisdiction.  Accordingly, the Court should dismiss Plaintiff's

Complaint as moot.").)  Defendant thus does not appear to seek the "typically proper disposition"

in a case where, at least at one point, it offered the Plaintiff arguably complete relief for her

claim.  Accordingly, the Court declines in this case to implement the "better resolution" outlined

in *McCauley*.  *See Cabala*, 736 F.3d at 229 ("It takes two to stage a useless litigation . . . ."); *see

also Fernandez v. Peter J. Craig & Assocs., P.C.*, 985 F. Supp. 2d 363, 370 (E.D.N.Y. 2013)

(finding that a Rule 68 offer did not moot the plaintiff's claim because it "did not provide for the

entry of judgment against defendant.").

In doing so, the Court also notes that nothing in *McCauley* or any other case appears to

*require* that the Court enter judgment in Plaintiff's favor and dismiss the case.  As discussed, in

*McCauley*, the parties, "[a]t oral argument, . . . agreed that entry of a default judgment would

satisfactorily resolve th[e] case."  402 F.3d at 342.  *McCauley* was thus not a case where the

court entered judgment over a plaintiff's objection.  The *Cabala* court confirmed this reading of

*McCauley*, describing *McCauley* as outlining the "*typically* proper disposition," and

characterizing *McCauley* as holding that "a court *may* in [the] circumstances [present in that

case] enter a judgment for plaintiff and terminate the litigation."  736 F.3d at 228 & n.2

(emphasis added).  Even in *Doyle*, the court held that the facts of that case provided the district

court "*sufficient* ground to dismiss th[e] case for lack of subject matter jurisdiction," but the court

did not hold that the court necessarily had to do so.  722 F.3d at 81 (emphasis added).  Finally, to

the extent those cases and others base their holdings on the *Abrams* court's recognition that

"there is no justification for taking the time of the court and the defendant in the pursuit of

miniscule individual claims which defendant has more than satisfied," *see Abrams*, 719 F.2d at 32, here, there is such a justification because Defendant has thus far not satisfied Plaintiff's claim and, through this Motion, is not seeking to satisfy Plaintiff's claim.  Therefore, to the extent the Court has discretion under *McCauley* over whether to enter judgment over Plaintiff's objection and moot her claim, the Court declines to do so at this time.

Having found that Plaintiff's individual claim is not moot, and having refused to enter judgment in Plaintiff's favor, the Court holds that Plaintiff's individual claim still presents a live case and controversy, and that the Court therefore has subject matter jurisdiction over Plaintiff's claim.  *See Chafin*, 133 S. Ct. at 1023 ("[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." (internal quotation marks omitted)); *ABN Amro*, 485 F.3d at 94 ("Mootness, in the constitutional sense, occurs when the parties have no legally cognizable interest or practical personal stake in the dispute, and the court is therefore incapable of granting a judgment that will affect the legal rights as between the parties." (internal quotation marks omitted)).  The Court thus denies Defendant's Motion to dismiss Plaintiff's individual claim pursuant to Rule 12(b)(1).

### b.  Class Claim

Even if the Court were to find that Plaintiff's individual claim were moot, Plaintiff has taken sufficient steps towards filing a motion for class certification, in accordance with this Court's individual rules, that her class claims would remain justiciable.

"[I]n general, if the claims of [a] named plaintiff[ ] become moot prior to class certification, the entire action becomes moot."  *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994).  Without certification, there can be no class under Rule 23, *see* Fed. R. Civ. P. (23)(c)(1), with the result being that the unnamed class members are not part of the action before the named

plaintiff's claims are mooted by a Rule 68 judgment. *See Bd. of Sch. Comm'rs of Indianapolis v. Jacobs*, 420 U.S. 128, 129 (1975) (holding that action was moot when named plaintiffs challenging school rules graduated before class had been certified). But, neither the Supreme Court nor the Second Circuit has ruled on whether class claims "should be dismissed . . . when a Rule 68 offer of judgment for full relief is made . . . *prior* to the filing of a motion for class certification," *Carlin v. Davidson Fink LLP*, No. 13-CV-6062, 2014 WL 4826248, at *3 (E.D.N.Y. Sept. 23, 2014) (emphasis added), or "on the effect [on class claims] of a Rule 68 offer made prior to resolution of a Rule 23 . . . certification motion," *Franco v. Allied Interstate LLC,* No. 13-CV-4053, 2014 WL 1329168, at *3 (S.D.N.Y. Apr. 2, 2014). The district courts have filled the void by, naturally, splitting on these questions. "[W]here a motion for class certification is pending at the time that the defendant makes an offer of judgment under Rule 68," some courts "have held that the certification of the class 'relates back' to the time of the filing of the [c]omplaint to . . . . prevent defendants from attempting to circumvent a class judgment by 'picking off' . . . named plaintiffs through the mooting of individual claims." *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 76–77 (E.D.N.Y. 2008); *see also Novella v. Westchester Cnty.*, No. 02-CV-2192, 2004 WL 3035405, at *4 (S.D.N.Y. Dec. 29, 2004) (recognizing that "[c]ourts have applied the 'relation back' doctrine" where "defendants are able to circumvent judgment by 'picking off' of 'buying off' named plaintiffs through the mooting of individual claims"); *Nasca v. GC Servs. Ltd. P'ship,* No. 01-CV-10127, 2002 WL 31040647, at *3 (S.D.N.Y. Sept. 12, 2002) (recognizing exception, and noting that it is "generally concerned with situations in which the named plaintiff has already filed a motion for class certification"); *cf. Comer*, 37 F.3d at 799 (noting "[w]here the claims of the named plaintiffs become moot prior to class certification, there are several ways in which mootness is not had," including certain

cases where "the courts permit the class certification to relate back to the filing of the complaint and hold that the plaintiffs have properly preserved the merits of the case for judicial resolution"); *Robidoux v. Celani*, 987 F.2d 931, 939 (2d Cir. 1993) ("Even where the class is not certified until after the claims of the individual class representatives have become moot, certification may be deemed to relate back to the filing of the complaint in order to avoid mooting the entire controversy."); *White v. Matthews*, 559 F.2d 852, 857 (2d Cir. 1977) (holding that class certification related back to the date when the plaintiff filed its challenge of Social Security Administration hearing delays because "[r]efusing to do so would mean that the SSA could avoid judicial scrutiny of its procedures by the simple expedient of granting hearings to plaintiffs who seek, but have not yet obtained, class certification").[11]

Additionally, some courts in the Second Circuit have broadened the exception.  These courts have found class claims to not be mooted by the filing of a Rule 68 offer of judgment even when the plaintiff had not yet filed a motion for class certification at all, provided that the "Rule 68 offer of judgment was made so early in the action that the plaintiff had not had a reasonable opportunity to move for class certification." *Bowens*, 546 F. Supp. 2d at 77.  As this Court has recognized, "there is ample authority" for applying this broadened exception to FDCPA plaintiffs. *Morgan v. Account Collection Tech.*, LLC, No. 05-CV-2131, 2006 WL 2597865, at *7-*8 (S.D.N.Y. Sept. 6, 2006) (denying defendant's motion to dismiss the complaint in the context of an unaccepted Rule 68 offer of judgment where the plaintiff had not yet had an

---

[11] This view finds support in other circuits. *See Weiss v. Regal Collections,* 385 F.3d 337, 347 (3d Cir. 2004) (applying exception "in light of [the] defendants' tactic of 'picking off' lead plaintiffs with a Rule 68 offer to avoid a class action"); *Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1051 (5th Cir.1981) (concluding that the case should not be dismissed as moot while there was "a timely filed and diligently pursued motion for class certification" pending); *Susman v. Lincoln Am. Corp.,* 587 F.2d 866, 869–71 (7th Cir. 1978) (same).

"opportunity to compile a record necessary to support a motion for class certification" and did

not engage in "undue delay").  The rationale is that "[t]aken to its absurd logical conclusion,"

finding class claims moot in these circumstances would "clearly hamper the sound

administration of justice, by forcing a plaintiff to make a class certification motion before the

record for such motion is complete," and by "allowing a defendant to avoid liability for class

wide relief . . . by the mere service of a Rule 68 offer at the outset of the case."  *Schaake v. Risk*

*Mgmt. Alternatives., Inc.*, 203 F.R.D. 108, 112 (S.D.N.Y. 2001).  "It would encourage a race to

the courthouse between defendants armed with uninformed offers and plaintiffs with under-

researched certification motions."  *McDowall v. Cogan*, 216 F.R.D. 46, 51 (E.D.N.Y. 2003).

    While the broad version of the exception is not widely accepted, the narrower view has

more support.  *See Morgan*, 2006 WL 2597865 at *4 (noting that the Fifth, Sixth, and Seventh

Circuits have endorsed the narrow form of the exception).  Indeed, while some courts in the

Second Circuit have refused to apply the broad version of the exception, *see, e.g., Ambalu v.*

*Rosenblatt*, 194 F.R.D. 451, 453 (E.D.N.Y. 2000) (adopting this approach), those courts often

suggest that they may have held differently had the plaintiff diligently filed its motion for class

certification prior to receiving the Rule 68 offer of judgment.  *See, e.g., Greif v. Wilson, Elser,*

*Moskowitz, Edelman & Dicker LLP*, 258 F. Supp.2d 157, 160-61 (E.D.N.Y. 2003) (finding class

claims moot after Defendant filed Rule 68 offer because the plaintiff had not filed for class

certification for 20 months after filing its complaint, noting that "[t]he cases the plaintiff

primarily relies upon are distinguishable insofar as they concern the issue of mooting a named

plaintiff's claims after the filing of a motion to certify, which Greif has not yet done," and

commenting that the "plaintiff [did] not indicate that she was prevented from commencing

discovery or moving for class certification"); *Tratt v. Retreival Masters Creditors Bureau, Inc.*,

No. 00-CV-4560, 2001 WL 667602, at *1‑*2 (E.D.N.Y. May 23, 2001) (following *Ambalu* and compelling acceptance of a Rule 68 offer that was made four months after the plaintiff filed its complaint and less than three months after the plaintiff filed its amended complaint, noting that, while the plaintiff served a notice of motion on the defendant, "motion papers ha[d] yet to be filed").  Regardless of how broadly this Court applies the exception, however, even if Plaintiff's individual claim was moot, Plaintiff's class claims would remain justiciable.

Under the broad version of the exception, Defendant filed its Rule 68 offer of judgment so soon after Plaintiff filed her Complaint that Plaintiff did not have a "reasonable opportunity" to file a motion for class certification.  Granted, there is "no precise definition of what constitutes either 'reasonable opportunity' or 'undue delay.'"  *Morgan*, 2006 WL 2597865 at *7.  As this Court has explained:

> [s]ome courts readily compel a Rule 68 offer of complete relief to an individual plaintiff prior to certification and dismiss the case as moot without explicitly considering the timing of the offer.  Other courts consider the timing of the offer and the diligence of the plaintiff in pursuing class certification to determine if the plaintiff had a reasonable opportunity to file for certification or if there has been undue delay. Yet, among these courts, there is no consistent definition of what constitutes a reasonable opportunity or an undue delay warranting dismissal.

*Id.* at *4 (internal citations omitted).  Courts in the Second Circuit have found that both Rule 68 offers of judgment filed only one day after the answer, *White v. OSI Collection Servs., Inc.,* No. 01-CV-1343, 2001 WL 1590518, at *4 (E.D.N.Y. Nov. 5, 2001), and those filed nearly seven months after the complaint (and six months after the initial answer), *Morgan*, 2006 WL 2597865 at *7–*8, do not afford the plaintiff reasonable time to file a motion for class certification.  *See also Isaacs v. Malen & Assocs., P.C.*, No. 13-CV-2386, 2013 WL 4734904, at *1 (S.D.N.Y. Aug. 14, 2013) (holding that the plaintiff's class claims were not moot because "the offer of judgment was made very early in the litigation well before plaintiff could be reasonably expected

to file its class certification motion" (internal quotation marks omitted); *Thomas v. Am. Serv. Fin. Corp.*, 966 F. Supp. 2d 82, 93-94 (E.D.N.Y. 2013) (holding that the plaintiff's class claims were not moot when the offer was made two months after the complaint was filed); *Nasca*, 2002 WL 31040647 at *3 (holding that the plaintiff did not have a reasonable opportunity to file for class certification when the defendant filed its offer less than two months after it filed its answer and one month after the initial conference); *Schaake,* 203 F.R.D. at 112 (holding that the plaintiff's class claims were not moot when the defendant made its offer only 32 days after the plaintiff filed its complaint).

Plaintiff filed her request for a pre-motion conference on July 16, 2013, five days after she filed her Complaint.[12]  (*See* PMC Letter 1.)  On July 30, 2013, the Court gave Defendant until August 15 to respond to Plaintiff's request.   (*See* Dkt. No. 9.  On that day, not even a month after Plaintiff initially filed her request, and before a pre-motion conference could be held, Defendant filed its Rule 68 Offer.  (*See* Dkt. No. 10.)  The instant case, therefore, is unlike those cases in which courts have declined to apply the broad version of the exception.   "[U]nlike the plaintiffs in *Ambalu and Greif*[,] who gave no reasons for [their] delay," Plaintiff in this case took the first—and only—step she could take just a few days after filing her Complaint: Plaintiff requested a pre-motion conference (Dkt. No. 17).[13]  *Morgan*, 2006 WL 2597865 at *8; *see also id.* at *4 (noting importance of "the diligence of the plaintiff in pursuing class certification" to

---

[12] Plaintiff filed her pre-motion letter intending to "avoid having the class claims mooted by a Rule 68 Offer of Judgment or other tender," noting that "the class needs to be protected." (PMC Letter 1.)

[13] The Court notes for the record that, although it granted Plaintiff's request for a pre-motion conference, (*see* Dkt. No. 17), it chose not to act on Plaintiff's request to file a motion for class certification at that conference, (*see* Dkt. (minute entry for Oct. 15, 2013)).  That request therefore remains pending.

"reasonable opportunity" calculus).  Additionally, Defendant filed its offer of judgment in this case "on the heels of the answer," before the Court could hold a pre-motion conference on Plaintiff's proposed motion for class certification.  *White*, 2001 WL 1590518 at *2 n.4; *see also id.* (distinguishing case from *Abrams v. Interco,* 719 F.2d 23 (2d Cir. 1983), because the plaintiffs in that case "did not move to certify until two years after they had filed the complaint," meaning "there was no concern . . . of a race to the courthouse . . . that . . . amounted to an effort to 'pick off' or 'buy off' the class action"); *Schaake,* 203 F.R.D. at 112 (distinguishing the case from *Ambalu* on the grounds that the plaintiff in *Schaake* "ha[d] in no way run afoul of Rule 23 by failing to move for certification before the filing of the [a]nswer" (emphasis omitted)).  Thus, absent breaking this Court's individual rules, Plaintiff availed herself of every opportunity to pursue a motion for class certification.  Because Defendant's Rule 68 offer of judgment was filed with its answer, and so soon after the Complaint, Plaintiff did not have a "reasonable opportunity" to file her motion, and therefore Plaintiff's class claims should survive even if Plaintiff's individual claim is moot.

Likewise, under the narrow view of the exception, although Defendant is correct that Plaintiff has no pending *motion* for class certification, Plaintiff does have a pending request to file a class certification motion.  It is generally this Court's practice to treat a party's filing of a request for a pre-motion conference, and a related request to file a motion, to trigger many of the same procedural consequences as the filing of the motion itself.  *See Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 370 (S.D.N.Y. 2006) (noting this Court's "uniform[ ] . . . practice" of tolling motion-filing deadlines "when either a pre-motion letter is filed or a motion is filed in contravention of the Court's individual practices," and declining to deem a motion "to be untimely simply by virtue of the Court's individual practices" where "the Court did not . . .

37

explicitly" toll the deadline).  Therefore, Plaintiff has, in effect, already filed a motion for class

certification, meaning her class claims are not moot.  *See Tocco v. Real Time Resolutions*, *Inc.*,

No. 14-CV-810, 2014 WL 3964948, at *5 (S.D.N.Y. Aug. 13, 2014) (finding plaintiff's class

claims not moot when plaintiff "requested permission to move for class certification before any

Rule 68 offer was made," and noting that "[i]f a Rule 68 offer made before a plaintiff had a

reasonable time to move for class certification could not moot a claim, then by extension a Rule

68 offer made after the plaintiff has moved for class certification should not do so"); *cf.*

*McDowall*, 216 F.R.D at 51 (disapprovingly citing authorities that require a plaintiff to file for

class certification before an offer of judgment expires, and noting that while plaintiff had not yet

filed for class certification, plaintiff "indicated [an] intention to do so expeditiously in [a] pre-

motion letter").

### 2.  Rule 12(b)(6)

The Court now turns to Defendant's Motion To Dismiss the Complaint under Rule

12(b)(6).  Plaintiff alleges four FDCPA violations, but Defendant objects to only two in this

Motion.  Defendant therefore moves to "dismiss [P]laintiff's FDCPA claim to the extent it is

based on [D]efendant's request in the letter that [P]laintiff indicate 'the nature of the dispute,'

and on the contention that the letter did not clearly state [that] [P]laintiff had 30 days from

receipt of the letter to dispute the debt."  (Def.'s Mem. 9.)

"Whether a collection letter is false, deceptive, or misleading under the FDCPA is

determined from the perspective of the objective least sophisticated consumer."  *Easterling v.*

*Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012) (internal quotation marks omitted).  "The least

sophisticated consumer test is an objective inquiry directed toward ensuring that the FDCPA

protects all consumers, the gullible as well as the shrewd."  *Id.* at 234 (alterations and internal

quotation marks omitted); *see also Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) ("The hypothetical least sophisticated consumer does not have the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer, but is neither irrational nor a dolt." (some internal quotation marks omitted)).  "Under this standard, collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate." *Easterling*, 692 F.3d at 233 (internal quotation marks omitted).  But "FDCPA protection does not extend to every bizarre or idiosyncratic interpretation of a collection notice and courts should apply the standard in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices." *Id.* at 233–34 (internal quotation marks omitted).  Finally, "because the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law" that the Court may resolve on a motion to dismiss. *Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 437 (E.D.N.Y. 2014) (internal quotation marks omitted); *see also Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 707 (S.D.N.Y. 2013) (same); *Beauchamp v. Fin. Recovery Servs., Inc.*, No. 10-CV-4864, 2011 WL 891320, at *2 n.18 (S.D.N.Y. Mar. 14, 2011) ("Although courts are divided on whether breach of the least sophisticated consumer standard is a question of law or fact, the trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss.")

### a.  Thirty-Day Period

Defendant first objects to Plaintiff's claim that the collection letter is misleading with respect to § 1692g(a)(3)'s requirement that a debt collector notify the consumer "that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any

portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(a)(3). Plaintiff does not dispute that the letter contains the required notice on the third page. (*See* MWC Letter 3 (notifying the recipient that, "unless the consumer, within thirty (30) days after receipt of this notice, disputes the validity of the debt or any portion thereof, the debt will be assumed to be valid by the debt collector").) Instead, Plaintiff's claim arises out of language on the second page of the letter, informing the recipient that "if any portion of this claim is disputed, you are to notify this office within 30 days . . . ." (*Id.* at 2.) Plaintiff contends that this language is misleading with respect to the starting date of the 30-day period—which, by statute, is the date of receipt of the notice—because the second page of the letter does not specify the starting date, "making the most logical interpretation 30 days from the date of [the] letter," or, at the very least, introducing ambiguity sufficient to violate the FDCPA. (Pl.'s Mem. 11–12.) Defendant argues that "[t]he notice is not inconsistent, confusing[,] or ambiguous." (Def.'s Reply 3.)

The Second Circuit has confronted this very issue in a case addressing an almost identical set of facts. In *Jacobson v. Healthcare Financial Services, Inc.*, 516 F.3d 85 (2d Cir. 2008), the defendant's collection letter contained language notifying the recipient of his or her obligation to dispute the debt "within 30 days," but it also contained a separate "validation notice" informing the recipient that he or she had "30 days from receiving th[e] notice" to dispute the debt. *Id.* at 92–93. The plaintiff claimed that "[a] recipient . . . would be uncertain as to whether the thirty-day period for submitting a notice began on the date of the letter . . . or instead started on the date [of receipt]." *Id.* at 92. Applying the least-sophisticated-consumer standard, the Second Circuit disagreed:

> Here . . . the contested statement says simply that payment or a notice must be submitted 'within 30 days,' without specifying when the period starts running.

40

> While the letter is, therefore, perhaps ambiguous as to when the thirty-day period begins, the validation notice clarifies any possible ambiguity.  It contains a clear and accurate statement of the starting date, informing [the recipient] that he has '30 days from receiving this notice' to submit the notice of dispute. . . .
>
> . . . .  Accordingly, we find that even the least sophisticated consumer, reading the document in its entirety, would understand that the thirty-day dispute period started running from the day she received the letter, rather than from the date the letter was written.

*Id.* at 93.  The court therefore affirmed the district court's grant of summary judgment for the defendant on this claim.  *Id.*

There is at least one difference between Defendant's letter and the letter in *Jacobson* that might affect the analysis in this case.  In *Jacobson*, "the clarifying language was . . . just two inches further down on the same page as the arguably ambiguous original statement," *id.* at 93, whereas here, the clarifying language is on a separate page.  However, in terms of the least-sophisticated-consumer test, this is a distinction without a difference.  In *McStay v. I.C. Sys., Inc.*, 308 F.3d 188 (2d Cir. 2002), on which *Jacobson* relied, the Second Circuit affirmed a district court's grant of summary judgment on a claim similar to Plaintiff's, where the front side of a double-sided letter contained a 30-day-period notice without specifying the starting date, but the back side of the letter contained a 30-day-period notice specifying that the period began after receipt of the notice.  *Id.* at 189.  In this context, the court held, like the *Jacobson* court, that "any confusion created by the ambiguity on the front of the letter dissipates when read in conjunction with the language on the back."  *Id.* at 191.  Here, it is unclear, based on the Complaint, whether Defendant's letter was double- or single-sided.  But even if the validation notice were on an entirely separate page, the logic of *Jacobson* and *McStay* applies with full force to this case.  *See Jacobson*, 516 F.3d at 93 (evaluating a hypothetical least sophisticated consumer's understanding of a document by presuming that the consumer "read[] the document in its

41

entirety"). Moreover, although Defendant's letter contains no notice like the letter in *McStay* "referring the reader to the reverse side [of the letter] for important information," *McStay*, 308 F.3d at 191, this also makes no difference for purposes of the least-sophisticated-consumer analysis. *See Castro*, 959 F. Supp. 2d at 707 ("[E]ven the least sophisticated consumer can be presumed to possess . . . a willingness to read a collection notice with some care." (internal quotation marks omitted)); *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 253 (S.D.N.Y. 2011) (same). The Court thus finds that, in the context of a three-page letter lacking a notice on the page with ambiguous language directing the reader to a page with clarifying language, "even the least sophisticated consumer, reading the document in its entirety, would understand that the thirty-day dispute period started running from the day she received the letter, rather than from the date the letter was written." *Jacobson*, 516 F.3d at 93. Accordingly, the Court grants Defendant's Motion To Dismiss this claim.

### b.  Nature of the Dispute

Defendant next objects to Plaintiff's claim that the collection letter is misleading because it informs the recipient that any notice of a dispute must "indicat[e] the nature of the dispute as to the amount due, or any part thereof," despite the lack of statutory language in § 1692g requiring the recipient to do so. Defendant does not dispute that the second page of the letter contains the following language:

> Despite our demand for payment, if any portion of this claim is disputed, you are to notify this office within 30 days, indicating the nature of the dispute as to the amount due or any part thereof. Absent receipt of such notice we will assume the debt to be valid as stated in this letter.

(MWC Letter 2.) Plaintiff contends that this language violates the FDCPA because, under that statute, "[a] debt collector cannot require the consumer to articulate a reason for disputing the debt." (Pl.'s Mem. 14.) In other words, Plaintiff effectively contends that the letter's language is

inconsistent with multiple subsections of § 1692g(a) requiring the debt collector to notify the consumer of his or her right to dispute the debt but not imposing any requirements on the substance of the consumer's notice of dispute.  *See* 15 U.S.C. § 1692g(a)(3) (requiring "a written notice containing . . . a statement that unless the consumer, [within the aforementioned 30-day period], disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector"); *id.* § 1692g(a)(4) (requiring "a written notice containing . . . a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed," the debt collector will obtain and mail to the consumer a copy of the verification or judgment).  Similarly, the language is allegedly a misleading statement with regard to a consumer's rights under § 1692g(b), which provides that "[i]f the consumer notifies the debt collector in writing with the thirty-day period . . . that the debt, or any portion thereof, is disputed, . . . the debt collector shall cease collection of the debt, or any disputed portion thereof . . . ."  15 U.S.C. § 1692g(b).  Defendant contends that the FDCPA "do[es] not prohibit a debt collector from asking the debtor to provide the nature of the dispute."  (Def.'s Mem. 8.)  And it separately contends that the letter "does not require [the recipient to] dispute the debt for a valid reason," that there is "no confusion which would lead the 'least sophisticated consumer' to believe that the debt could only be disputed for a valid reason," and that, therefore, "[t]he language contained in the letter asks for no more than what is required by statute."  (*Id.* at 8–9.)

The Second Circuit addressed a similar claim in *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159 (2d Cir. 2001).  There, the defendant had sent the plaintiff a letter with the following relevant language:

> This notice will serve to inform you that your overdue balance . . . has been referred to . . . a debt collector.  [The creditor] insists on payment *or a valid reason* for your

> failure to make payment. . . .  Unless you notify us to the contrary, we will assume the amount due is correct. . . .  *In the absence of a valid reason* for your failure to make payment, pay the above debt or contact the [creditor] to settle this matter.

*Id.* at 160 (some emphasis removed).  The Second Circuit found this language to be inconsistent with the FDCPA's notice requirements:

> [The defendant's] letter to plaintiff states that the creditor 'insists on' a valid reason for failure to make payment.  The letter further instructs the plaintiff that 'in the absence of' such a valid reason, he should either pay the debt or contact the creditor to settle.  The [FDCPA], however, gives the consumer the right to notify the debt collector that the debt 'is disputed,' in which event the collector must cease all efforts to collect until it has verified the debt and mailed verification to the consumer.  The consumer's right to take the position, at least initially, that the debt is disputed does not depend on whether the consumer has a valid reason not to pay.  The consumer, for example, may not recognize the name of the creditor, may not know whether she incurred the debt, may have a question whether the debt (or part of it) has been paid, or may be unsure of the amount.  Assuming the debt is in fact owed, these would not be 'valid reasons' not to pay it.  Nonetheless, regardless of the absence of a valid reason for nonpayment, the collector is obligated by the [FDCPA] to cease collection, pending verification, if it receives the consumer's written notification of 'dispute,' and the Act requires the collector to notify the consumer of the collector's obligation to obtain verification upon receipt of such notice.

*Id.* at 162.  The court thus found that "[a] recipient, especially if unsophisticated, might well have understood that the collector's obligation to obtain verification would arise only if the consumer presented a valid reason for nonpayment," and that this understanding "would be inconsistent with the [statutorily] required message."  *Id.*  Accordingly, the court vacated the district court's order granting the defendant's motion to dismiss because it found that the letter "had sufficient capacity to confuse an unsophisticated consumer on a message required by the [FDCPA]," but it explicitly "[did] not reach the further question whether the letter violated the [FDCPA] as a matter of law."  *Id.*

Initially, the Court notes that Defendant's letter is arguably more consistent with the FDCPA than the defendant's letter in *DeSantis*.  In *DeSantis*, the letter specifically informed the recipient that he or she must provide a "valid reason" for disputing the debt.  *See id.* at 160.

44

Here, instead of asking the recipient to provide a "valid reason," Defendant's letter asks the recipient to "indicat[e] the nature of the dispute as to the amount due or any part thereof." (MWC Letter 2.)  In other words, the letter appears to ask the recipient to provide a "reason," but not necessarily a "valid" one.

Nevertheless, Plaintiff has stated a claim for an FDCPA violation based on this language. Although Defendant's letter does not request that the recipient indicate a "valid" reason for the dispute, *DeSantis* did not turn on this fact; instead, it held that a hypothetical least sophisticated consumer "might well have understood" the notice to mean something that "would be inconsistent with the [statutorily] required message." *Id.* at 162.  It further defined the "required message" as one notifying the consumer of his or her "right to notify the debt collector that the debt 'is disputed,'" and it held that the consumer may exercise this right "regardless of the absence of a valid reason for nonpayment." *Id.*  Because the statute, under *DeSantis*, does not require a "valid reason," and because it also just as surely does not require an "invalid reason," the clear implication of the Second Circuit's interpretation of the statute is that it requires no reason at all.  Therefore, to the extent that Plaintiff alleges that Defendant's letter notifies the recipient that he or she must "indicat[e] the nature of the dispute," Plaintiff has stated a claim for an FDCPA violation.

The Court's holding is also consistent with *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996), where the Second Circuit reversed a grant of summary judgment for the defendant in a case involving a confusing and contradictory message regarding the plaintiff's right to dispute the debt.  There, the letter notified the recipient that "if [he or she] [did] not dispute th[e] claim . . . and wish[ed] to pay it within the next 10 days[,] [the debt collector] [would] not post th[e] collection to [the recipient's] file." *Id.* at 32.  Applying the least-sophisticated-consumer

45

standard, the Second Circuit found that such a consumer reading that language "would fear that unless she decided not to dispute the claim and to pay it within 10 days, the debt she owed would be 'posted' to her credit file." *Id.* at 34 (emphasis removed). This would lead a hypothetical least sophisticated consumer to "readily believe . . . that were she to take any course other than payment to [the debt collector] within 10 days, it would permanently affect her credit record." *Id.* But this understanding would be inconsistent with the notice required under the FDCPA, which is that a consumer "ha[s] 30 days to decide whether to contest the claim." *Id.* Accordingly, the court held that the objectionable language "overshadowed and contradicted" the statutorily required notice, thereby "violat[ing] § 1692g as a matter of law," and it held that the language was "reasonably susceptible to an inaccurate reading" and was thus "deceptive," thereby violating § 1692e(10). *Id.* at 35.

Here, Plaintiff alleges that Defendant's letter is inconsistent with the statutory language triggering a debt collector's obligations upon receipt of a dispute, regardless of the nature of the dispute, and that Defendant's letter is "false, deceptive, or misleading" with regard to the recipient's options following receipt of the letter. (*See* Pl.'s Mem. 14–15; Compl. ¶¶ 22–24.) In other words, where the statute requires the debt collector to notify a consumer of his or her right to dispute a debt, Plaintiff alleges that Defendant's letter fails to notify the consumer of this right, but instead notifies the consumer of a right to dispute the debt *so long as* the consumer *also* "indicat[es] the nature of the dispute." (MWC Letter 2.) Just as the *Russell* court vacated summary judgment for the defendant where the plaintiff alleged that the defendant's notice failed to notify the recipient that he or she "had 30 days to decide whether to contest the claim," 74 F.3d at 34, here the Court finds that Plaintiff has stated a claim for an FDCPA violation where

Defendant's letter allegedly fails to inform the recipient that he or she may contest the claim through notification of a dispute alone.

In addition to arguing that the FDPCA "do[es] not prohibit a debt collector from asking the debtor to provide the nature of the dispute," Defendant also argues that "[t]he letter at issue does not require [the recipient] [to] dispute the debt for a valid reason." (Def.'s Mem. 8.) In Defendant's view,

> [t]he letter simply asks for a description of the subjective nature of the dispute—i.e., the dispute as the borrower see[s] it—nothing more. There is no modifier in the letter suggesting an objective, qualitative gloss on the reason for the dispute requiring it to be valid or defensible. Rather, the letter simply asks for what the borrower already must have come to in her mind if she made the decision to dispute the validity of the debt in the first place. . . . Asking the borrower to verbalize the dispute does not ask for anything more than contemplated by the statute. The very nature of a dispute means the opposing party is going to advance an opposing view. The language contained in the letter asks for no more than what is required by statute.

(*Id.* at 8–9.) Even if the Court agreed with Defendant's interpretation of the letter, the interpretation helps, rather than hurts, Plaintiff's claim. Specifically, for reasons the Court has already explained, Defendant's admission that the letter "asks for a description" and "[a]sk[s] the borrower to verbalize the dispute" is consistent with Plaintiff's allegation that such a request is inconsistent with the statute, which does not require a consumer provide such a "description" or "verbalization" when disputing a debt.

Moreover, to the extent that Defendant also argues that a least sophisticated consumer would not read the letter to require him or her to provide such a description or verbalization, the Court finds that Plaintiff has stated a claim that a hypothetical least sophisticated consumer would understand the letter to contain such a requirement. The letter's language notifying the recipient that "if any portion of this claim is disputed, you are to notify this office within 30 days, indicating the nature of the dispute," could be understood to mean "if any portion of this claim is

disputed, you are to . . . indicat[e] the nature of the dispute." (MWC Letter 2.)  Similarly, the letter's language notifying the recipient that, "[a]bsent receipt of such notice[,] we will assume the debt to be valid," could be understood to mean "[a]bsent receipt of [notice indicating the nature of the dispute], we will assume the debt to be valid."  (*Id.*)  Both of these plausible readings would be inconsistent with § 1692g's notice requirements.

Therefore, because Defendant's letter "ha[s] sufficient capacity to confuse an unsophisticated consumer on a message required by [§ 1692g]," and because it would "arguably interfere[] with a correct understanding of the" required message, the Court holds that Plaintiff has stated a claim for an FDCPA violation on this theory.  *DeSantis*, 269 F.3d at 162.[14]

### III.  CONCLUSION

In light of the foregoing, the Court denies Defendant's Motion To Dismiss the Complaint pursuant to Rule 12(b)(1), and it grants in part and denies in part Defendant's Motion To Dismiss the Complaint pursuant to Rule 12(b)(6).  Plaintiff may proceed in the case under the first, second, and fourth theories of FDCPA liability identified in her Complaint.  (*See* Compl. ¶¶ 19–20, 22.)  The Clerk of Court is directed to terminate the pending Motion.  (*See* Dkt. No. 24.)

SO ORDERED.

Dated:     November  6  , 2014
           White Plains, New York

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

---

[14] To be clear, given the procedural posture of this case, the Court does not hold that Defendant's letter violated the FDCPA as a matter of law.

48